UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | |
|---|---|
| ROMAN ANTATOLEVICH SUROVTSEV,<br>    Petitioner,<br><br>v.<br><br>KRISTI NOEM, et al.,<br><br>    Respondents. | No. 1:25-CV-160-H |

## ORDER

    Roman Surovtsev is in ICE custody to enforce an indisputably valid order of removal issued against him in 2014 after he was convicted of armed carjacking. Upon being re-detained in 2025 after a failed removal in 2014, he seeks habeas relief. In support, he asserts that the respondents failed to provide him the notice, interview, and opportunity to respond required by law. But even assuming the alleged procedural violations occurred, any error was harmless given the expanded procedure that Surovtsev has received throughout this case, and, in any event, a writ of habeas corpus would not be the appropriate remedy. Additionally, Surovtsev insists that his re-detention violates the Due Process Clause and the INA because there is no significant likelihood of his removal in the foreseeable future and because there are no changed circumstances to merit his re-detention. But three changed circumstances combine to show otherwise: (1) Ukraine recently provided Surovtsev with a travel-document application, and that application process remains active; (2) Ukraine stands in a markedly different and more cooperative footing with the United States today than in 2014; and (3) the evidence shows that, if Ukraine denies his application, respondents plan to remove Surovtsev to Russia or a third country. Thus, the Court denies relief.

As detailed below, the Court denies Surovtsev's habeas petition (Dkt. No. 1). The Court likewise denies his claims for universal declaratory and injunctive relief, which rest on the same faulty arguments as his request for habeas relief. Finally, his motion for a preliminary injunction (Dkt. No. 2) is denied as moot.

1. **Factual and Procedural Background**

    A. **Factual Allegations and Evidence**

    Surovtsev was born in 1984 in the Soviet Union in what is today the city of Mariupol. Dkt. No. 1 at 12. Mariupol is within the de jure territory of Ukraine. But in 2022, Russian forces laid waste to the city, captured it, and have since claimed the territory as an integral part of Russia. *See id.* at 16. Surovtsev's mother moved the family from the Soviet Union to America in 1989 when Surovtsev was four. *Id.* at 12. In light of Surovtsev's departure from the Soviet Union and that regime's subsequent collapse, the parties dispute whether Surovtsev is a Ukrainian citizen or lacks citizenship in any country. Dkt. Nos. 1 at 12; 17 at 2.

    In 2002, Surovtsev was convicted of burglary. Dkt. No. 1 at 12–13. A year later, he committed an armed carjacking and served 11.5 years in prison. *Id.* After his release in 2014, Surovtsev entered ICE custody. Dkt. No. 1 at 13. He was ordered removed in November 2014. *Id.* Because neither Russia nor Ukraine could confirm his citizenship, Surovtsev was released from ICE custody in 2015 on an order of supervision. *Id.* at 15. Surovtsev remained on the order of supervision from 2015 to August 2025, when he was re-detained during a routine ICE check-in. *Id.* at 16. Surovtsev was subsequently removed to the Bluebonnet Detention Center, *id.* at 5, where he has remained in custody for 91 days.

Surovtsev now petitions for habeas, declaratory, and injunctive relief. Dkt. No. 1. Attached to his habeas petition are two exhibits. Dkt. Nos. 1-1; 1-2. Exhibit A contains documents from the failed 2014–2015 removal attempt. The first document in the exhibit is a statement from the Ukrainian Consulate indicating that Surovtsev's citizenship could not be confirmed and that, therefore, Ukraine would not issue a travel document for Surovtsev. Dkt. No. 1-1 at 2. Also attached are the order of supervision and associated documents, *id.* at 3–8, and various other ICE documents indicating the agency's attempts to remove Surovtsev from the country, *id.* at 9–46. Exhibit B contains a description of the current administration's policies for removal. Dkt. No. 1-2.

The respondents have provided several documents as well. Dkt. No. 18. First, the respondents offer a declaration from deportation officer Zachery Haggerty, who states that ICE is seeking to remove Surovtsev to Ukraine, that Ukraine has provided a travel-document application to Surovtsev, and that if Ukraine ultimately denies the application, ICE will seek to remove Surovtsev to a third country. *Id.* at 5–7. A second declaration from deportation officer Brian Shelton indicates that Surovtsev attempted to file an application for stay of removal, which was denied because Surovtsev failed to provide the requisite documents. *Id.* at 9–10. The respondents' evidence also includes numerous documents relating to Surovtsev's criminal history and prior deportation attempts, *id.* at 12–72, and his 2014 order of removal, *id.* at 73.

**B.     Procedural Background**

On August 20, 2025, Surovtsev field a petition for writ of habeas corpus and a motion for a preliminary injunction in the Dallas Division of the Northern District of Texas. Dkt. Nos. 1; 2. On August 26, United States Magistrate Judge Brian McKay ordered the

case transferred to this Court. Dkt. No. 10. The Court then ordered the respondents to show cause why Surovtsev's writ should not be granted and to respond to Surovtsev's motion for a preliminary injunction. Dkt. No. 13. The respondents filed their response on September 15, 2025. Dkt. No. 17. Surovtsev filed his reply on September 25. Dkt. No. 19. On September 26, the Court issued an order asking the respondents to defend its assertion that Surovtsev is a Ukrainian citizen, whether his potential statelessness raises the question of third-country removal, and whether third-country removal is lawful. Dkt. No. 20. The respondents issued their response on October 10, 2025, and Surovtsev replied the same day. Dkt. Nos. 21; 22. The habeas petition is ripe for review.

## 2.     Legal Standards

Ordinarily, the government must remove an alien ordered removed within 90 days of a final order of removal. 8 U.S.C. § 1231(a)(1)(A). If an alien is not removed within this period, the alien is subject to supervision. *Id.* § 1231(a)(3). Supreme Court precedent clarifies these statutory provisions. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court interpreted 8 U.S.C. § 1231(a)(6) to determine how long the government may detain an alien pending removal under this section. *Id.* at 682. The Court first determined that challenges to detainment under this provision are available under 28 U.S.C. § 2241, which is the basis of Surovtsev's habeas petition. *See id.* at 688; Dkt. No. 1 at 4. Turning to the merits, the Supreme Court concluded that the government may not detain indefinitely aliens under this provision. *Zadvydas*, 533 U.S. at 699. Rather, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* Courts facing these questions "must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Id.*

A court measures reasonableness "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* Courts must also "take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700. Further, courts must "listen with care when the Government's foreign policy judgments, including . . . the status of repatriation negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Id.*

"[T]o limit the occasions when courts will need to make" difficult judgments, the Supreme Court recognized a "presumptively reasonable period of detention" of six months. *Id.* at 700–01. After that six-month period, the alien has the burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. After meeting this burden, the burden shifts to the government to provide evidence to rebut the alien's showing. *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Federal regulations govern the issues in this habeas petition as well. 8 C.F.R. § 241.4(l)(iii) gives the government discretion to end an order of supervision "to enforce a removal order." Whether changed circumstances have arisen to permit removal are governed by 8 C.F.R. § 241.13. *See* § 241.4(b)(4). Section 241.13(a) "establishes special review procedures for those aliens who are subject to a final order of removal and are detained under the custody review procedures provided at § 241.4 after the expiration of the

removal period, where the alien has provided good reason to believe there is no significant likelihood of removal to the country to which he or she was ordered removed . . . in the reasonably foreseeable future." Section 241.13(i)(2) of this regulation provides that "[ICE] may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

3. Analysis

    A. **Even assuming that the respondents did not follow the procedural requirements of 8 C.F.R. §§ 241.4(l) and 241.13(i)(3), Surovtsev would not be entitled to habeas relief.**

        i. **Any error in failing to follow the procedural requirements of 8 C.F.R. §§ 241.4(l) and 241.13(i)(3) was harmless.**

Surovtsev contends that the respondents have failed to follow the INA and its implementing regulations by failing to provide Surovtsev with an "individualized determination[] that changed circumstances render [him] significantly likely to be removed from the United States in the reasonably foreseeable future" and did not provide Surovtsev with "notice of such changed circumstances and an opportunity to be heard." *See* Dkt. No. 1 at 21–22.[1] The parties have filed dueling statements—a declaration from Surovtsev's arresting officer and a declaration from Surovtsev's attorney—disputing what information or process was provided at the August 2025 meeting that resulted in Surovtsev's detention. *Compare* Dkt. No. 18 at 10 (Declaration of Brian Shelton), *with* Dkt. No. 19-1 (Declaration of Karina Roque).

---

[1] Surovtsev also contends that ICE failed to "determin[e] that changed circumstances render his removal significantly likely in the reasonably foreseeable future." Dkt. No. 1 at 20–21. That contention is addressed *infra* Analysis § 3(B).

For the purpose of this analysis, the Court assumes that the respondents have yet[2] to follow the procedural requirements of sections 241.4(l) and 241.13(i)(3). Harmless error applies in immigration cases generally. *Rangel-Betancourt v. Barr*, 820 F. App'x 253, 255 (5th Cir. 2020) (citing *Enriquez-Gutierrez v. Holder*, 612 F.3d 400, 407 (5th Cir. 2010)); *Jalloh v. Garland*, No. 202117, 2023 WL 1859918, at *2 (4th Cir. Feb. 9, 2023) (citing *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004)) (further citation omitted). The same is true for an agency's procedural violations. *See City of Arlington v. FCC*, 668 F.3d 229, 243–44 (5th Cir. 2012). Under a harmless-error analysis, the party asserting error bears the burden of demonstrating prejudice. *Id.* at 243.

The facts here are on point with a recent decision of this Court, *Nguyen v. Noem*, ___ F. Supp. 3d ___, No. 6:25-CV-057, 2025 WL 2737803 (N.D. Tex. Aug. 10, 2025) (*Nguyen v. Noem*). There, the petitioner challenged his detention process as a violation of section 241.13(i)(3), which governs revocation of an order of supervision for removal. Section 241.13(i)(3) requires "notice, an informal interview, and a limited opportunity to respond and present information regarding the changed circumstances." *Id.* at *4. Here, as in that case, Surovtsev has had the opportunity to obtain counsel, to make a full argument to a federal court regarding his detention, submit evidence, respond to the respondents' arguments, and benefit from the Court's orders asking for more information and promises from the respondents. *Id.*; *see* Dkt. Nos. 1–2; 13–14; 17–22. As a result, Surovtsev "has clearly been given notice because the respondents have fully explained through briefing and declarations the basis for their conclusion." *Nguyen v. Noem*, 2025 WL 2737803, at *5.

---

[2] The Court notes that there is no particular timeline in which these procedures must happen. The procedures all take place after the alien is detained, so they are not precursors to detention. *See* 8 C.F.R. § 241.13(i)(3) (procedures arise "promptly after [an alien's] return to [ICE] custody").

– 7 –

Because Surovtsev has received more than a full notice and an opportunity to be heard, even if the respondents failed to conform to the regulations set forth in section 241.4(l)(1), any error is now harmless in light of the procedures in this case. There is no basis, on these grounds, for ordering Surovtsev's immediate release. As explained below, *infra* Analysis § 3(B), habeas is not backward-looking, so the process provided now renders forward-looking relief separately inappropriate.

> **ii. Even if the respondents failed to abide by the requirements of 8 C.F.R. §§ 241.4(l) and 241.13(i)(3) and the error was harmful, a writ of habeas corpus would not be the appropriate remedy.**

Surovtsev urges that, "[h]aving failed to provide [him] with the process mandated by its own regulations," his revocation order is invalid and thus habeas is appropriate. *See* Dkt. Nos. 1 at 21; 2 at 13–14. In support of his argument, Surovtsev relies on a single case: *Hoac v. Becerra*, No. 2:25-CV-01740, 2025 WL 1993771 (E.D. Cal. July 16, 2025). However, *Hoac* only addressed the petitioner's likelihood of success in securing a preliminary injunction and did not resolve his habeas petition. *Id.* at *7. Even assuming, however, that ICE's detention of Surovtsev constitutes harmful error, a writ of habeas corpus would be an inappropriate remedy.

Habeas corpus "may not be used to correct mere irregularities or errors of law." *Wooten v. Bomar*, 267 F.2d 900, 901 (6th Cir. 1959). "[T]he failure of officials 'to follow their own policies, without more, does not constitute a violation of due process,' making a writ of habeas corpus generally not available." *Nguyen v. Noem*, 2025 WL 2737803, at *6 (quoting *Iruegas-Maciel v. Dobre*, 67 F. App'x 253, 253 (5th Cir. 2003)). For instance, in *Wilkinson v. Dotson*, the Supreme Court held that the petitioners had raised cognizable claims under 42 U.S.C. § 1983, but the Court warned that their holding "d[id] not mean

immediate release from confinement or a shorter stay in prison; it mean[t] at most new eligibility review." 544 U.S. 74, 82 (2005). Thus, a petitioner may not use habeas to "fulfill . . . administrative requirements." *Nguyen v. Noem*, 2025 WL 2737803, at *6; *see Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (habeas "cannot be used properly for any other purpose" than release "from unlawful imprisonment or custody").

Like the petitioner in *Nguyen v. Noem*, Surovtsev does not allege that ICE's violations of the procedural requirements amount to a constitutional violation. *See* Dkt. No. 1 at 20–21. Accordingly, habeas relief is not warranted on these grounds.

> **B.   Because circumstances have changed and there is now a significant likelihood that Surovtsev may be removed to Ukraine or another country in the reasonably foreseeable future, the respondents did not violate 8 C.F.R. § 241.4(l), § 241.13(i)(2), or the Fifth Amendment.**

Surovtsev asserts that the respondents violated sections 241.4(l) and 241.13(i)(2), as well as the Due Process Clause of the Fifth Amendment, when they re-detained him without there being changed circumstances. *See* Dkt. Nos. 1 at 19–21; 2 at 9–11. Because both the alleged regulatory and constitutional violations turn on the same question of law, the Court addresses them together and concludes that changed circumstances justify Surovtsev's detention, so there is no violation of section 241.4(l), section 241.13(i)(2), or the Fifth Amendment under the standards generally applicable under *Zadvydas*.

"But before turning to the merits of this discussion, the Court must consider the appropriate standards." *Nguyen v. Noem*, 2025 WL 2737803, at *7. The operative language is that ICE "may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). "This regulation gives the decision-making power primarily to ICE and not

to this Court," such that the Court's review "is necessarily limited." *Nguyen v. Noem*, 2025 WL 2737803, at *8. To prevail, the government need only establish "a significant likelihood that removal in the reasonably foreseeable future may occur," rather than "be certain or immediate." *Id.* (citing 8 § 241.13(i)(2)).

Surovtsev's arguments appear to suggest that ICE ought to have made findings of changed circumstances particular to him. His petition emphasizes Ukraine's previous inability to secure information regarding Surovtsev's citizenship from government facilities in Mariupol and the fantastic improbability of doing so now that the city is under Russian control. Dkt. No. 1 at 19. The petition addresses at length the fraught conditions that exist in the area of Ukraine where Surovtsev was born. *Id.* at 16–17. However, while individualized circumstances are certainly relevant, they are not exclusively relevant. The Court is entitled to consider all other relevant evidence in the record, such as "meaningful changes in the diplomatic relationship" between the United States and the country of removal, the securance of travel documents, and definite plans to remove the petitioner. *Nguyen v. Noem*, 2025 WL 2737803, at *8–9.

The facts in this case, both particular and general, undermine Surovtsev's argument. ICE detained Surovtsev in 2014 and submitted a travel-document application to Ukraine. Dkt. No. 1 at 13. After months of discussion, the Ukrainian Vice Consul informed ICE that Surovtsev's place of birth, Mariupol, Ukraine, was in a warzone, and the government was unable to secure information about his citizenship. *Id.* at 13–14; Dkt. No. 18 at 6. Russia, his alternative country of removal, denied having records and so declined to issue travel documents. Dkt. No. 18 at 6. ICE then concluded that there was no significant likelihood of removal in the reasonably foreseeable future. Dkt. No. 1 at 14–15. Since then, the

conflict around southeastern Ukraine has turned into a great conflagration between that country and the government of Russia, placing Surovtsev's birthplace under occupation. Dkt. No. 1 at 16–17.

ICE has now detained him again. ICE is submitting a travel-document application to the government of Ukraine. Dkt. No. 18 at 6–7. If that application is unsuccessful, the respondents indicate that they will attempt to remove Surovtsev to Russia. Dkt. No. 21 at 2. If Russia fails, they will seek removal to some other country. *Id*. In 2014, ICE "rarely pursued third-country removals." Dkt. No. 18 at 7. But as of 2025, ICE now "actively" pursues third-country removals, granting the agency "expanded" options. *Id.* Surovtsev does not dispute that his 2014 order of removal remains in effect, that he listed both Russia and Ukraine as countries of removal, or that the INA permits his removal to a third country. Dkt. No. 22 at 3.

On these facts, there is a significant likelihood that ICE may be able to secure Surovtsev's removal in the reasonably foreseeable future. First, Ukraine has provided Surovtsev with a travel-document application, and the process to complete that application is now underway. That the previous attempt to deport Surovtsev failed does not bar the government from trying again, especially given that 14 years have passed since the last revocation and the circumstances in Ukraine—and its relationship with the United States—are markedly different now. Ukraine has cooperated with the government's recent requests, and, if Surovtsev completes the travel application, the Ukrainian government will be able to consider the application and either grant the application or deny it.

Relatedly, the Court takes notice of the Ukrainian government's realignment and increasingly close ties with the United States since the 2014 deportation attempt. Prior to

the Maidan Revolution in early 2014, Ukraine's government aligned with Moscow. But after Maidan—and especially after Russia's escalation of the conflict in 2022—the Ukrainian government has become increasingly tied and indebted to the European Union and the United States. In particular, the United States has invested over $128 billion in Ukraine.[3] The United States has also taken an open interest in shaping the postwar economy of Ukraine, promising subsidies to rebuild the war-torn portions of the country[4] and negotiating a share of Ukraine's mineral resources in the eastern territories.[5] Unsurprisingly, these efforts have been accompanied by American overtures to remove individuals to Ukraine.[6] These factors are all the more reason for the government to try once more to secure Surovtsev's removal. The reapplication for documents, combined with the Ukrainian government's continued and expanding cooperation with the United States, generates a significant likelihood that ICE may have the ability to remove Surovtsev in the reasonably foreseeable future.

Finally, Ukraine is not the only possible path to removal. If Ukraine rejects the application, then ICE will seek to remove Surovtsev to Russia or a willing alternative country. Courts that have considered whether the current administration's practice of third-country removal creates a significant likelihood of removal in the reasonably foreseeable

---

[3] *See* Jonathan Masters & Will Merrow, *Here's How Much Aid the United States Has Sent Ukraine*, COUNCIL ON FOREIGN RELS. (July 15, 2025), https://perma.cc/V8ZF-4S3T; *U.S. Security Cooperation with Ukraine*, U.S. DEP'T OF STATE (Mar. 12, 2025), https://perma.cc/U9QL-4FFV (detailing military support).

[4] *Treasury Announces Agreement to Establish United States-Ukraine Reconstruction Investment Fund*, U.S. DEP'T OF TREASURY (Apr. 30, 2025), https://perma.cc/NC2C-32LW.

[5] Gracelin Baskaran & Meredith Schwartz, *What to Know About the Signed U.S.-Ukraine Minerals Deal*, CTR. FOR STRATEGIC & INT'L STUDIES (May 1, 2025), https://perma.cc/K25J-T7F8.

[6] *See, e.g.*, Ted Hesson & Kristina Cooke, *Trump Weighs Revoking Legal Status of Ukrainians as US Steps Up Deportations*, REUTERS (Mar. 6, 2025), https://perma.cc/RH5U-H8S6.

future have analyzed the government's efforts no differently than efforts to remove an individual to his country of choice.[7] Here, Surovtsev does not dispute ICE's ability to employ third-country removals. Dkt. No. 22 at 3–4. And evidence before the Court shows these removals are happening. *See* Dkt. No. 21 at 3–5. While ICE has not offered detailed plans for third-country removal, none are necessary at this time. ICE has identified third-country removal as an alternative to its plan to remove Surovtsev to Ukraine. The Court is obligated to "giv[e] due weight to the likelihood of successful future negotiations." *Zadvydas*, 533 U.S. at 702. In light of the undisputed policy, the Court "has no reason to believe that these efforts will be unsuccessful." *Misirbekov*, 2025 WL 2451030, at *2.

In response, Surovtsev relies on two cases that prove unpersuasive. *See* Dkt. No. 1 at 9–11. In *Escalante v. Noem*, the district court dismissed the government's efforts as "conclusory statements" about their future plans for removal. No. 9:25-CV-182, 2025 WL 2206113, at *4 (E.D. Tex. Aug. 2, 2025). To be sure, the government cannot succeed merely by showing it has made "good faith efforts" for which the outcome is not "impossible." *Zadvydas*, 533 U.S. at 702 (quotation omitted). But, for the reasons stated above, the evidence indicating near-future removal is not conclusory.

Surovtsev also cites *Nguyen v. Hyde*, 788 F. Supp. 3d 144 (D. Mass. 2025). There, the district court found that the submission of a travel-document application did not create a significant likelihood of removal because there was "no clear information as to whether or

---

[7] *See Kamyab v. Bondi*, No. C25-389, 2025 WL 2917522, at *3 (W.D. Wash. Oct. 14, 2025) (explaining that failed attempts to secure travel documents for third-country removal undermined likelihood of removing petitioner to his country of origin); *Ambrosi v. Warden, Folkston ICE Processing Ctr.*, No. 5:25-CV-13, 2025 WL 2772500, at *1 (S.D. Ga. Sept. 29, 2025) (concluding that the failure to provide timeframe for removal to a third country rendered removal insufficiently likely); *Misirbekov v. Venegas*, ___ F. Supp. 3d ___, No. 1:25-CV-168, 2025 WL 2451030, at *2 (S.D. Tex. Aug. 25, 2025) (noting that ICE's third-country removal efforts created a significant likelihood of removal in the foreseeable future).

when [the application] was submitted," whether the receiving country "acknowledged receipt of the request or otherwise responded," "or the anticipated wait time for a response" from that country. *Id.* at 152. But this Court has most of that missing information: the application will be submitted pending Surovtsev's cooperation, Ukraine has acknowledged the request and has remained cooperative, and the process is underway. *See* Dkt. No. 18 at 5–7. Moreover, the District of Massachusetts did not consider the relevance of third-country removal efforts, as this Court has done here. Surovtsev's remaining cases are irrelevant.[8]

The Court is aware that several district courts around the country have recently concluded that third-country removals are unlikely simply because no attempts were made at third-country removals despite years between the date of release on an order of supervision and the re-detention.[9] This line of reasoning appears to assume that *Zadvydas*' "six-month period does not reset when the government detains" someone, "releases him from detention, and then re-detains him again." *Nguyen v. Scott*, ___ F. Supp. 3d ___, 2025

---

[8] In *Perez-Escobar v. Moniz* the court held ICE's detention process to be procedurally deficient. ___ F. Supp. 3d ___, No. 25-CV-11781, 2025 WL 2084102, at *2 (D. Mass. July 24, 2025). The Court did not address whether a significant likelihood of removal existed. In *Valdez v. Joyce*, the district court addressed changes in circumstances for whether the petitioner was a flight risk—not whether a significant likelihood of removal existed. No. 25 Civ. 4627, 2025 WL 1707737, at *3 (S.D.N.Y. June 18, 2025).

[9] *Douglas v. Baker*, No. 25-CV-2243, 2025 WL 2997585, at *4 (D. Md. Oct. 24, 2025) ("Douglas has not yet been removed despite the government . . . having had over nine years since his removal order became final to attempt to effectuate his [order]."); *S.F. Bostock*, No. 3:25-CV-1084, 2025 WL 2841022, at *4 (D. Or. Oct. 7, 2025) ("nearly twenty years" between re-detention and order of removal); *Zavvar v. Scott*, Civ. A. No. 25-2104, 2025 WL 2592543, at *7 (D. Md. Sept. 8, 2025) ("for a period of over 17 years . . . Respondents either made no efforts to remove [the petitioner], or any such efforts were unsuccessful"); *Tadros v. Noem*, No. 25cv4108, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) ("there is no significant likelihood of [petitioner's] removal in the reasonably foreseeable future because fifteen years have gone by without the Government securing a third country for his removal.").

WL 2419288, at *13 (W.D. Wash. Aug. 21, 2025) (*Nguyen v. Scott*) (quoting *Sied v. Nielsen*, No. 17-CV-6785, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)).

But reliance on these cases would be misplaced. Even if a challenge to removal is not premature under *Zadvydas*' six-month period, the petition will be denied if the respondents establish a significant likelihood that they may be able to remove the petitioner in the reasonably foreseeable future. *Villanueva v. Tate*, ___ F. Supp. 3d ___, Civ. A. No. H-25-3364, 2025 WL 2774610, at *11 (S.D. Tex. 2025); *Kajiage v. Johnson*, No. 3:19-CV-294, 2019 WL 2290001, at *2 (N.D. Tex. Apr. 17, 2019), *R. & R. adopted*, 2019 WL 2287858 (May 29, 2019). The lack of prior third-country removal might be salient where "there is presently no country in the world willing to accept [the petitioner]." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025). But beyond that point, these district court decisions fail to account for the new administration's well-known sea change in the area of third-country removals. In essence, turning back the clock to what could have been done before January 20, 2025 would forever bind the administration to the conduct of past administrations. But the reality is now different: third-country removals are regularly occurring. *See* Dkt. No. 18 at 7. The Court is thus unpersuaded by this argument.

In sum, although Surovtsev's deportation is neither certain nor guaranteed, the circumstances before the Court, especially when combined, show a significant likelihood of Surovtsev's removal in the reasonably foreseeable future. Accordingly, the Court rejects Surovtsev's claim that the respondents have violated the INA and the Fifth Amendment.[10]

---

[10] The Court's denial, however, does not prejudice the filing of a subsequent habeas petition if the government's efforts to remove Surovtsev to Ukraine or a third country fall short and he is not released.

### C. The Court denies Surovtsev's claims for declaratory and injunctive relief.

Surovtsev's petition further seeks declaratory and injunctive relief, alleging that ICE is required by the INA and the Fifth Amendment "to make individualized determinations that changed circumstances render [Surovtsev] and other similarly situated persons significantly likely to be removed from the United States in the reasonably foreseeable future prior to revoking their supervision orders[,] re-detaining them[,] to notify them of the reasons for their re-detention[,] and provide an opportunity to be heard on the matter." Dkt. No. 1 at 23.

The Court denies these claims for relief. The wording of Surovtsev's petition seems to make two claims: that the detention is unlawful as to himself and that the detention is unlawful as to others "similarly situated." *Id.* The Court has already found that Surovtsev's own detention does not violate the INA or the Fifth Amendment, *supra* Analysis § 3(B), so his personal claims for declaratory and injunctive relief are denied.

Likewise, the Court cannot grant relief as to persons similarly situated. Such demands for "universal" relief by an individual plaintiff generally "exceed the equitable authority that Congress has granted to federal courts." *Trump v. CASA, Inc.*, 606 U.S. 831, 837 (2025). If such relief is ever appropriate, it may be because "the modern class action" is analogous to the historic judicial power to issue a bill of peace. *Id.* at 849. But Surovtsev has not sought class certification or complied with any of the requirements of Federal Rule

of Civil Procedure 23.  There is no class in this case, so the Court lacks authority to issue relief to anyone other than Surovtsev himself.[11]

### D. A hearing is not necessary.

"When the district court has sufficient facts before it to make an informed decision on the merits of the habeas petitioner's claim, it does not abuse its discretion in failing to conduct an evidentiary hearing." *Gallegos v. Quarterman*, 265 F. App'x 300, 303 (5th Cir. 2008) (citation modified).  An evidentiary hearing is required only when the federal court lacks sufficient undisputed facts to make an informed decision.  *Barrientes v. Johnson,* 221 F.3d 741, 770 (5th Cir. 2000).  As the analysis above shows, no hearing is necessary here.

The dispute regarding the INA and the Fifth Amendment does not warrant a hearing.  As explained above, assuming that the respondents failed to abide by the procedural requirements of the INA, any error was harmless.  And even if it were harmful error, a writ of habeas corpus ordering his release would not be the appropriate remedy.  In addition, "[t]he Court must give appropriate deference" to the respondent's expanded ability to remove Surovtsev in light of its undisputed power to conduct third-country removals, as well as the respondent's renewed attempts to seek removal to Ukraine.  *See Nguyen v. Noem*, 2025 WL 2737803, at *12.  The Court thus does not find a hearing necessary or appropriate to determine whether changed circumstances make Surovtsev's removal significantly likely in the reasonably foreseeable future.

---

[11] The Court is aware of ongoing litigation in *D.V.D. v. DHS*, No. 1:25-CV-10676, in the District of Massachusetts.  That case is a non-opt-out class action challenging third-country removal.  *See D.V.D. v. DHS*, 778 F. Supp. 3d 355, 378 (D. Mass. 2025).  However, Surovtsev is not presently a member of that class because the respondents seek to first remove him to Ukraine, his requested country of removal.

Further, Surovtsev's constitutional argument does not warrant a hearing for essentially the same reasons that one is not necessary to determine whether there is a significant likelihood that changed circumstances have led Surovtsev's removal to be likely in the reasonably foreseeable future. Even without applying the presumption in *Zadvydas*, there is no due-process violation present today because he is being held for imminent removal. No evidence or argument at a hearing would change this result. The Court thus concludes that no hearing is necessary to resolve this dispute and resolves the case now on the briefing and evidence in the present record.

**4.    Conclusion**

Surovtsev brought this habeas petition and motion for a preliminary injunction primarily on the grounds that it was not significantly likely he would be removed to Ukraine in the reasonably foreseeable future. *See generally* Dkt. Nos. 1; 2. The respondents re-detained Surovtsev because it planned to re-apply for travel documents more than a decade after their last attempt, and because the respondents are now actively pursuing third-country removal as an alternative. Surovtsev urges that the respondents failed to provide him the notice, informal interview, and opportunity to respond and present limited evidence that 8 C.F.R. § 241.13(i)(3) requires. But even if the respondents did violate these procedures, any error was harmless in light of the expanded procedure that Surovtsev has received throughout this case. Moreover, even if the error were harmful, Surovtsev's requested relief of release would not be justified, and the Court is skeptical of its jurisdiction to order other relief, such as forcing the respondents to follow these procedures now. Finally, the Court finds that there is a significant likelihood of Surovtsev's removal to Ukraine or a third country in the reasonably foreseeable future. The Court thus denies Surovtsev's habeas

petition and claims for declaratory and injunctive relief (Dkt. No. 1).  Because the Court is resolving this case on the merits and closing the case, the Court denies as moot Surovtsev's motion for a preliminary injunction (Dkt. No. 2).

So ordered on October 31, 2025.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE